IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VECTURA LIMITED,<br><br>        Plaintiff;<br><br>   v.<br><br>GLAXOSMITHKLINE LLC and GLAXO GROUP LIMITED,<br><br>        Defendants. | Civil Action No. 16-638-RGA |

MEMORANDUM OPINION

Kelly E. Farnan and Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Dominick A. Conde, Christopher P. Borello and Damien N. Dombrowski, VENABLE LLP, New York, NY, attorneys for Plaintiff.

Jack B. Blumenfeld and Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Martin J. Black, Kevin M. Flannery, Robert Ashbrook, Sharon K. Gagliardi, DECHERT LLP, Philadelphia, PA; Blake B. Greene, DECHERT LLP, Austin, TX; Katherine A. Helm, DECHERT LLP, New York, NY, attorneys for Defendants.

September 12, 2019



ANDREWS, U.S. DISTRICT JUDGE:

Currently pending before the Court is Plaintiff's Motion for Supplemental Damages, Enhanced Damages, an Ongoing Royalty, Pre- and Post-Judgment Interest, and Attorney Fees. (D.I. 338). The parties have fully briefed the issues. (D.I. 339, 344, 350). For the following reasons, I grant the motion as to supplemental damages, pre-judgment interest, post-judgment interest, and an ongoing royalty, and deny the motion for enhanced damages or attorney fees.

**I.     BACKGROUND**

On July 27, 2016, Plaintiff Vectura Limited sued Defendants GlaxoSmithKline LLC and Glaxo Group Limited for direct and induced infringement of U.S. Patent No. 8,303,991 ("the '991 patent"). (D.I. 1). The '991 patent relates to pharmaceutical compositions for inhalation. (D.I. 82 at 1). Before trial, Plaintiff narrowed their infringement case to assert direct infringement of claim 3 of the '991 patent ("the asserted claim"). (D.I. 307). Plaintiff also pursued a claim of willful infringement of the asserted claim. (*Id.* at 11). Defendants asserted a noninfringement defense and an invalidity defense under 35 U.S.C. § 103. (*Id.*; D.I. 320 at 2).

Claim 3 of the '991 patent depends from claims 1 and 2. Together, the claims read as follows:

> 1. Composite active particles for use in a pharmaceutical composition for pulmonary administration, each composite active particle comprising a particle of active material and particulate additive material on the surface of that particle of active material, wherein the composite active particles have a mass median aerodynamic diameter of not more than 10 μm, and wherein the additive material promotes the dispersion of the composite active particles upon actuation of a delivery device.
>
> 2. Composite active particles as claimed in claim 1, wherein the additive material includes one or more of: an amino acid or derivative thereof; a peptide or derivative thereof, a phospholipid or derivative thereof, a surface active material; or a metal stearate and derivative thereof.
>
> 3. Composite active particles as claimed in claim 2, wherein the additive material includes magnesium stearate.

('991 patent, cls. 1-3).

After a five-day trial, the jury returned the following verdict: (1) Defendants infringed claim 3 of the '991 patent, (2) claim 3 was not invalid for obviousness, (3) Plaintiff was entitled to an ongoing royalty payment of three percent for a total sum of $89,712,069 through December 31, 2018, and (4) Defendants' infringement was willful. (D.I. 321). The parties have now filed post-trial motions. Plaintiff requests the following: (1) an award of supplemental damages at the jury-determined royalty rate of 3% of U.S. sales of the accused products from January 1, 2019 to the entry of judgment on May 16, 2019; (2) enhancement of damages for the period from August 1, 2016 through May 16, 2019 by 33.3% for Defendants' willful infringement; (3) an ongoing royalty rate of 4% for post-judgment sales; (4) an award of pre-judgment interest; (5) an award of post-judgment interest; and (6) if I decline to enhance the damages award, an award of reasonable attorney fees. (D.I. 339 at 1).

## II. SUPPLEMENTAL DAMAGES AND INTEREST

### A. Supplemental Damages

The jury awarded damages for the period from August 1, 2016 to December 31, 2018. Supplemental damages cover the period from January 1, 2019 to May 16, 2019, the date of judgment. (D.I. 339 at 3). Plaintiff seeks supplemental damages at the 3% royalty rate determined by the jury. (*Id.*).

Defendants argue that Plaintiff's motion for supplemental damages and interest is time-barred because the motion was filed one day after the 28-day deadline stated in Federal Rule of Civil Procedure 59(e). (D.I. 344 at 2).[1] However, the Third Circuit has recognized that "time

---

[1] I note that the day after a judgment consistent with the jury verdict was entered (D.I. 333), I entered a separate order on the schedule for post-trial briefing (D.I. 335). Plaintiff's filing was consistent with this order.

limits that are not based on a statute, such as the one governing Rule 59(e), are not jurisdictional rules, but claim-processing rules." *Lizardo v. U.S.*, 619 F.3d 273, 277 (3d Cir. 2010). "The 'unique circumstances' doctrine has been applied by courts in certain unique situations, as its name implies, to contravene the effects of untimely filings." *S.O.I.TEC, S.A. v. MEMC Elec. Materials, Inc.*, 2011 WL 2748725, at *8 (D. Del. July 13, 2011). The "unique circumstances" doctrine may be appropriate to provide relief under such claim-processing rules. As in *S.O.I.TEC*, "(1) there was no miscalculation involved; (2) it is apparent that [Plaintiff] relied on the parties' agreement in filing its motion on [June 14, 2019]; and (3) there is no indication that either party knew the one-day extension was inappropriate when requested." *Id.* Thus, I determine that Plaintiff's motion for supplemental damages and interest is not time-barred.

Defendants make no other argument regarding the propriety of supplemental damages beyond asserting two corrections to Plaintiff's supplemental damages number. (D.I. 344 at 2 n. 2). Defendants assert that Ms. Schenk used "estimates for sales for the period from April 1 through May 16" while Dr. Kerr used actual sales and "did not account for a deduction for the lesser of 4.5% net sales of £23.56M annually, which she made in her original damages calculation." (*Id.*) Ms. Schenk's declaration admits that she relied on estimates for sales for the period from April 1 through May 16. (D.I. 340, ¶ 5).

Accordingly, I will award Plaintiff supplemental damages for the period from January 1, 2019 through May 16, 2019, based on the actual sales data for that period and a 3% royalty rate.

### B. Pre-Judgment Interest

Pre-judgment interest should be awarded "absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Plaintiff seeks pre-judgment interest at the prime rate, compounded quarterly. (D.I. 339 at 23). Defendant argues

that (1) the motion should be denied because pre-judgment interest would be a "windfall" overcompensating Plaintiff for the use of its patents and (2) if the motion is granted, pre-judgment interest should be calculated at the Treasury Bill Rate, compounded quarterly. (D.I. 344 at 26). Defendants assert that the Treasury rate is more appropriate given Plaintiff's low borrowing rate. (*Id.*).

This Court has noted that "the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time." *Finjan Software, Ltd. v. Secure Computing Corp.*, 2009 WL 2524495, at *13 (D. Del. Aug. 18, 2009), *aff'd in part, rev'd in part on other grounds*, 626 F.3d 1197 (Fed. Cir. 2010) (citations and quotation marks omitted). I do not believe Plaintiff's low borrowing rate counsels otherwise.

Thus, I will award pre-judgment interest at the prime rate, compounded quarterly.[2]

### C. Post-Judgment Interest

Post-judgment interest is governed by 28 U.S.C. § 1961. Section 1961(a) provides, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

Thus, I will award Plaintiff post-judgment interest at the Treasury bill rate as defined in § 1961(a), compounded annually.

---

[2] This is what I have done in other cases. *E.g. Bayer v. Baxalta*, 2019 WL 4016235, at *7 (D. Del. Aug. 26, 2019); *Nox Med. Ehf v. Natus Neurology Inc.*, 2018 WL 4062626, at *8 (D. Del. Aug. 27, 2018); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 6118447, at *11 (D. Del. Nov. 20, 2013), *aff'd*, 597 F. App'x 630 (Fed. Cir. 2015).

## III.   ENHANCED DAMAGES

"[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Section 284 "provid[es] that punitive or increased damages could be recovered in a case of willful or bad-faith infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1930 (2016) (quotation marks omitted). "The *Halo* test merely requires the district court to consider the particular circumstances of the case to determine whether it is egregious." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).

Although not required, the court may consider the *Read* factors as part of its analysis. *Presidio*, 875 F.3d at 1382 (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992)). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. 970 F.2d at 827.

For *Read* factor one, Plaintiff argues that Defendants "deliberately copied [Plaintiff's] invention of composite active particles with magnesium stearate." (D.I. 339 at 4). Defendants argue that the timeline of Defendants' product development and Plaintiff's patent application indicates that product development was not influenced by copying. (D.I. 344 at 4-5). In view of the jury's willful infringement verdict, which I upheld on JMOL, it is not clear to what extent Defendants considered the asserted patent while developing its accused products. However, the undisputed evidence points away from deliberate copying. The parties agree that Defendants used

6

magnesium stearate only after testing the use of other excipients (D.I. 344 at 6 (citing D.I. 357 at 141:12-15)), which weighs against a determination that Defendants were deliberately copying Plaintiff's patented invention. Thus, I find that factor one weighs against the enhancement of damages.

For *Read* factor two, Plaintiff argues that the jury found willful infringement and that Defendants had no good-faith belief of noninfringement. (D.I. 339 at 6). I agree that, in view of the willful infringement verdict, Defendants did not have a good-faith belief of noninfringement. (*See* D.I. 360 at 16-17). Thus, I find factor two weighs in favor of enhanced damages.

Plaintiff does not address *Read* factor three. As Defendants note, the parties in this case both comported themselves professionally throughout the litigation. (D.I. 344 at 13). Thus, I find factor three weighs against enhanced damages.

For *Read* factor four, Plaintiff argues that Defendants' size and financial condition are large and "would not be materially impacted by enhancing the damages award." (D.I. 339 at 17). Defendants do not dispute this but argue that this factor is generally only "given weight *against* enhancement in situations where, for instance, the other *Read* factors strongly support enhancement but the infringer is in such perilous financial condition that an award of enhanced damages might put it out of business." *Idenix Pharmaceuticals LLC v. Gilead Sciences, Inc.*, 271 F. Supp. 3d 694, 701 (D. Del. 2017). However, courts in this district have weighed this factor in favor of enhancement. *See, e.g.*, *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 528 (D. Del. 2008). As in *TruePosition*, "[a]n enhanced damages award will not jeopardize [Defendants'] financial well-being" *id.*, and therefore this factor weighs in favor of enhancing damages.

For *Read* factor five, Plaintiff argues that Defendants presented weak defenses and that the jury quickly ruled in their favor.[3] (D.I. 339 at 17). I do not believe that Defendants' defenses were so weak as to be meritless. Defendant presented both a noninfringement and invalidity defense.

Defendants presented "considerable evidence in support of [their] assertions of noninfringement." *Edwards Lifesciences AG v. CoreValve, Inc.*, 2011 WL 446203, at *12 (D. Del. Feb. 7, 2011), *aff'd in relevant part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012).

Defendants also presented an invalidity defense with prior art references that contain each and every claim element of the asserted claims. Both of Plaintiff's experts at trial admitted that each claim element was disclosed in the prior art but disputed the explicit disclosure of magnesium stearate used as the additive in CAPs. (D.I. 354 at 743:5-15; D.I. 355 at 919:5-15). Plaintiff argues that the fact that Defendants dropped their 35 U.S.C. § 112 defenses before trial indicate that those theories were weak. (D.I. 339 at 15). However, that is not the inquiry here. Defendants' obviousness defense was presented to the jury, and it made the case at least relatively close. Thus, the fifth *Read* factor weighs against enhancement of damages.

For *Read* factor six, Plaintiff argues that Defendants have been infringing the asserted patent for nearly three years, which includes a period of post-litigation infringement. (D.I. 339 at 18). Because the infringement period was long and included post-litigation infringement, this factor weighs in favor of enhancement.

For *Read* factor seven, Plaintiff argues that Defendants have not taken any remedial action to avoid infringement. (*Id.*). However, given the closeness of the case, and the fact that the jury's

---

[3] As I have noted in previous cases, I do not think the length of jury deliberations is a meaningful metric. *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2019 WL 3322322, at *10 n. 7 (D. Del. July 24, 2019).

verdict has compensated Plaintiff for Defendants' post-litigation infringement,[4] I find this factor to be neutral.

For *Read* factor eight, Plaintiff argues that Defendants had a motivation to harm Plaintiff due to complications from Plaintiff's partnerships with other companies to develop generic versions of Defendants' products and Defendants believed that Plaintiff would not bring a lawsuit. (D.I. 339 at 18-19). But none of the documents or testimony presented by Plaintiff on this factor includes any communications from Defendants that would provide either circumstantial or direct evidence of Defendants' motivations. Thus, Plaintiff cannot show that Defendants had a motivation to harm Plaintiff. I find that this factor weighs against enhancement.

For *Read* factor nine, Plaintiff argues that Defendants "did not substantively respond to any of [Plaintiff's] repeated requests for information regarding the accused products." (D.I. 339 at 19). There is no dispute between the parties that the accused products were openly sold. (D.I. 344 at 18).[5] Thus, this factor weighs against enhancement.

On balance, the *Read* factors weigh against enhanced damages. The arguments do not persuade me that the facts of this case are egregious.[6] Therefore, despite the jury's finding of willful infringement, I do not think enhanced damages are warranted.

IV. **Attorney's Fees**

Plaintiff requests, in the alternative, that I award Plaintiff reasonable attorney fees for an exceptional case under 35 U.S.C. § 285. (D.I. 339 at 24).

---

[4] This is not a case of lost profits where Defendants' ongoing infringement deprives the Plaintiff of profits upon its own products. The only dispute here is whether Defendants were required to license the technology and pay a reasonable royalty.
[5] Plaintiff did not contest this representation in their reply brief.
[6] I gave a willfulness instruction to the jury that did not require a finding of "egregiousness" or the equivalent. (D.I. 319 at 6).

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In assessing the totality of the circumstances, the Court may consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. The party seeking fees must show that a case is exceptional by a preponderance of the evidence. *Id.* at 557-58.

Plaintiff argues this is an exceptional case warranting fees because Defendants willfully infringed and further relies on its analysis of the *Read* factors. (D.I. 339 at 24). Defendants argue that the Court should not find this case exceptional because there was a triable dispute and Defendants "engaged in good faith efforts to simplify issues and to reduce resources expended in the case while reasonably pursuing a resolution of the merits." (D.I. 344 at 27 (quoting *Ferring Pharm. Inc. v. Par Pharm., Inc.*, 2018 WL 6696040, at *1-2 (D. Del. Dec. 19, 2018))). For the following reasons, I do not find this case to be exceptional.

Although willfulness is a factor relevant to an exceptional case determination, it is not dispositive. *See Octane Fitness*, 572 U.S. at 554 ("[T]here is no precise rule or formula for making [exceptional case] determinations, but instead equitable discretion should be exercised") (internal citation and quotations marks omitted). As I determined above, I do not think Plaintiff has shown

that Defendants' noninfringement and invalidity theories were frivolous or unreasonable. As noted under *Read* factor five, this was a close case.

Nor did Defendants engage in litigation misconduct or unprofessional behavior that may "suffice, by themselves, to make a case exceptional under § 285." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013). Plaintiff has made no allegation of litigation misconduct.

Therefore, considering the totality of the circumstances, Plaintiff has failed to meet its burden of showing that this is an exceptional case warranting attorney fees. Thus, I will deny Plaintiff's motion for attorney fees.

## V. ONGOING ROYALTY

Plaintiff requests that I award an "ongoing royalty" on post-judgment sales of 4%, if damages were enhanced, or 3%, if damages were not enhanced, through the expiration of the '991 patent. (D.I. 339 at 22). Defendants assert that I should exercise my discretion to "defer any decision on whether to award an ongoing royalty until after an appeal." (D.I. 344 at 20). In the alternative, Defendants request that I cap the ongoing royalty at £13 million[7] annually. (*Id.* at 21).

First, the Federal Circuit has explained that entitlement to ongoing royalties is a matter of discretion for the district court. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007) ("Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate" but such a remedy should not be provided "as a matter of course whenever a permanent injunction is not imposed.").[8] While an ongoing royalty is not automatic, "the Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL

---

[7] Or $16.44 million.
[8] I note that Plaintiff did not seek a permanent injunction.

11

6687122, at *9 (N.D. Cal. Nov. 25, 2014). It does not appear that Defendants dispute the appropriateness of an ongoing royalty if the infringement and invalidity verdicts are upheld on appeal. Defendants' briefing makes no argument that I should not order an ongoing royalty.[9] Thus, as there appears to be no dispute that an ongoing royalty is appropriate to compensate Plaintiff for any ongoing infringement, I will exercise my discretion to grant an ongoing royalty.

Second, I decline to defer determination of the ongoing royalty rate until after any appeal. The Federal Circuit does not require that I defer determination. *See Paice LLC*, 504 F.3d at 1315 (stating district court "may wish" to defer determination). Any delay in determining the ongoing royalty rate would delay the entry of final judgment. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 F. App'x 882, 882 (Fed Cir. 2012) (determining that ongoing royalty must be decided for judgment to be final); *see also Apple, Inc.*, 2014 WL 6687122, at *7; *Cioffi v. Google, Inc.*, 2017 WL 4011143, at *1 (E.D. Tex. Sept. 12, 2017). Additionally, the parties have been negotiating since before this case began. The parties vigorously dispute the amount of an ongoing royalty rate, and there is no suggestion by either party that the parties could reach an agreement in a timely manner. (D.I. 339 at 19-21; D.I. 344 at 20-21 (requesting deferral of ongoing royalty determination until post-appeal)). Thus, the parties' behavior and briefing indicate that any order to negotiate ongoing royalties is likely to be futile and only delay the entry of final judgment. The factors involved in determining an ongoing royalty rate in this case are straightforward. I see no reason to delay this determination.

Third, to determine the ongoing royalty rate, courts have used the *Georgia-Pacific* factors. "Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Apple, Inc.*, 2014 WL 6687122, at *14 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*,

---

[9] Other than the argument that I should defer the decision.

*Inc.*, 670 F.3d 1171, 1193 (Fed. Cir. 2012), *vacated on other grounds*, 467 F. App'x 747. I must consider (1) the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability," *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008), (2) "changed economic circumstances, such as changes related to the market for the patented products," *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018), and (3) any other "post-verdict factor" that would impact "what a hypothetical negotiation would look like *after* the prior infringement verdict." *Id.*

Here, the parties have not addressed the *Georgia-Pacific* factors in full but focus on specific factors supporting a departure from the jury's verdict. Plaintiff asserts that the following factors support increasing the royalty rate above the 3% rate determined by the jury: (1) the jury has determined the '991 patent is valid and infringed; (2) the accused products are more commercially successful now than they were previously; and (3) the jury has determined that Defendants' infringement is willful. (D.I. 339 at 21).

First, I do not believe that the changed circumstances from the jury verdict and increased sales would significantly impact the post-verdict hypothetical negotiation as compared to the hypothetical negotiation considered by the jury. While Plaintiff would be in a stronger bargaining position based upon the jury verdict,[10] I do not believe that this stronger position would allow

---

[10] I say this because the Federal Circuit has said this, but I am unsure of the logic behind this view. The Federal Circuit's ongoing royalty opinions suggest that it is the resolution of any uncertainty regarding validity and infringement that strengthens the patentee's bargaining position. *See Amado*, 517 F.3d at 1362 ("Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved."); *see also ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012) ("[W]hile it is likely true that Verizon would not have agreed to that amount prior to litigation, Verizon has been adjudicated to infringe and the patent has been held not invalid after a substantial challenge by Verizon.").
 Yet, in the original hypothetical negotiation, the parties are assumed to be willing licensors and licensees and the patent is considered valid and infringed. After the trial, there is a jury verdict that the patent is valid and infringed. Thus, the jury verdict has not changed anything in that regard. In both hypothetical negotiations, the parties want to reach an agreement. The only difference is the fact of the jury verdict, but since the patent is valid and infringed in either scenario, and the parties know this, it seems to me the pressure on the infringer to take a license is the same in

Plaintiff to negotiate an "above-market" rate for the '991 patent. At trial, both parties' damages experts referred to a comparable license between the parties which provided a license to Plaintiff's entire respiratory portfolio at a royalty rate of 3% with an annual worldwide cap. (D.I. 353 at 449:1-450:7, 451:34-454:8; D.I. 355 at 845:5-15, 858:11-859:8). Additionally, Defendants currently license other patents from Plaintiff at a lower 1% rate. (D.I. 353 at 500:11-24). Plaintiff appears to tacitly agree with the assessment that without enhancement of the ongoing royalty rate for willfulness, the appropriate ongoing royalty rate is 3%. (D.I. 339 at 22).

Defendants assert that the ongoing royalty rate should be capped consistent with the previous license agreement between the parties. (D.I. 344 at 21). Defendants note that every license agreement between the parties included a cap on royalties. (*Id.* at 22 (citing testimony from both parties' experts)). I disagree. The jury considered this same evidence and concluded that an ongoing royalty of 3%[11] would have resulted in the hypothetical negotiation of July 2016. (D.I. 321). I see no reason why a post-verdict hypothetical negotiation between the parties would reinstate a cap on the royalty payments, especially in light of the increased sales of the accused products and the strengthened bargaining position of Plaintiff.

Second, I do not believe that the jury's willfulness verdict would affect a post-verdict hypothetical negotiation. Nor will I enhance the ongoing royalty as the *Read* factors do not support such an enhancement. Additionally, as at least one court has explained:

> If it is improper to use willfulness as a basis for enhancing the ongoing royalty in a case in which an injunction has been granted and stayed, it would seem at least equally improper to use willfulness as a basis to enhance the ongoing royalty in a situation in which the equities would not even permit the issuance of an injunction

---

either hypothetical negotiation (assuming any changes in economic circumstances do not impact the negotiation). *See* Mark A. Lemley, *The Ongoing Confusion over Ongoing Royalties*, 76 MO. L. REV. 695, 704-05 (2011); *cf. Apple Inc.*, 2014 WL 6687122, at *2 (citing Lemley).

[11] While the jury was not asked to explicitly assess whether or not a cap would be appropriate on the royalty, the jury did have the option to assess a lump-sum payment for the life of the patent. Had the jury felt a capped amount was more appropriate, it could have assessed the lump-sum payment based upon the royalty cap for the remainder of the patent term. The jury did not do so. (*See* D.I. 321).

in the first place. And it may be even more improper in a case such as this one, which involves a non-competitor, in which the plaintiff chooses not to seek an injunction, and in which the defendant's continuing infringement in fact benefits the plaintiff by generating sales from which ongoing royalties can be awarded.

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 3034655, at *9 (E.D. Tex. 2017) (discussing *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1356 (Fed. Cir. 2008)). I agree with the Eastern District of Texas that willfulness is not an appropriate ground to enhance an ongoing royalty rate where the plaintiff is a non-competitor who benefits from the defendant's ongoing infringement.

Thus, I will grant Plaintiff's motion for an ongoing royalty rate of 3% to compensate Plaintiff for Defendants' post-judgment U.S. sales of the accused products through the expiration of the '991 patent.

## VI. CONCLUSION

For the foregoing reasons, I GRANT Plaintiff's motion for supplemental damages, pre-judgment interest, post-judgment interest, and an ongoing royalty rate, and DENY the motion as to enhanced damages and attorney fees. An accompanying order will be entered.